OPINION OF THE COURT
Ralph Yachnin, J.
The Town of North Hempstead has enacted sections 70-196 through 70-203 by which it seeks to regulate the use of signs. The defendants Marvin Middlemark, Michael Bassart and William and George Grupinski are charged with permitting a free-standing political sign to be on their premises in violation of section 70-201 of the North Hempstead Code which makes it "unlawful to erect and/or maintain any free standing political sign in any use district”. The defendants Patricia Braia and Edwin Gleniewicz, Visual Color Metrics, Inc., Maple Street Realty Corp. and the defendant Nicholas Lancella are charged with permitting a political wall sign to be maintained without having obtained a permit in violation of subdivision (F) of section 70-201. The defendant First Investors, Inc. was charged with having violated both of the aforesaid sections.
The defendants admit the charge but have pleaded not guilty based upon their contention that the ordinance under which they are charged is in violation of the Constitution of the United States in that it transgresses on the equal protection clause and the First Amendment.
It is the defendants’ claim that since the section of the ordinance which deals with political advertising differs from that part relating to signs of a nonpolitical nature, and that since the nonpolitical signs are treated in a less stringent way, there has been a violation of the equal protection clause. The *762 defendants further state that the total prohibition of free standing political signs is an infringement of First Amendment rights. In addition, the difference in fees and bonding requirements as to the two types of signs are a further violation of the equal protection clause.
On the other hand, the town contends that its enactments are permissible under the police power for they reflect valid legislative concern for aesthetic interests and that the regulations fall within the "time, place, and manner” limitation on speech pronounced in Virginia Pharmacy Bd. v Virginia Consumer Council (425 US 748). As to the fee divergence, the town claims a rational relationship exists between the difference in fees. The bonding assures compliance with sign removal after election time.
 It is well established that the town may regulate outdoor advertising signs under its police power. (2 NY Jur, Advertising and Advertisements, § 7.) While signs are a form of speech protected by the First Amendment (Ross v Goshi, 351 F Supp 949), the power of local government to regulate, pursuant to its police power, the "time, place, and manner” of speech is of long standing tradition. (Cantwell v Connecticut, 310 US 296.) It is equally well settled that the police power may be exercised in a manner designed to promote aesthetic purposes. (People v Stover, 12 NY2d 462.)
To constitute a legitimate "time, place, and manner” restriction, an ordinance must: (1) be justified without reference to the content of the regulated speech; (2) serve a significant governmental interest; and (3) permit alternative channels of expression to remain open. (Virginia Pharmacy Bd. v Virginia Consumer Council, supra; United States v O’Brien, 391 US 367.) When ordinances attempt to regulate content, courts are swift to hold them unconstitutional. (Baldwin v Redwood City, 540 F2d 1360; Peltz v City of South Euchlid, 11 Ohio St 2d 128; Ross v Goshi, supra.)
The issue in this case is the constitutionality of an ordinance which makes an arbitrary distinction between political signs and nonpolitical signs. Because the ordinance treats some advertising differently from others, an analysis of the ordinance in terms of the equal protection clause is in order. This is done, bearing in mind that the classification of signs, and the resultant equal protection claim, is closely intertwined with defendants’ First Amendment right of freedom of expression.
*763 The equal protection clause requires that statutes affecting First Amendment interests be narrowly tailored to their objectives. (Williams v Rhodes, 393 US 23.) In the instant case, the ordinance is both unnecessarily restrictive and predicated upon a discriminatory scheme of classification.
The town has classified signs. It has done so in a manner which inhibits political expression in that free standing political signs are proscribed. Such a scheme is restrictive of fundamental rights and unsupported by compelling State interests; and thus is unconstitutional.
Because political campaign signs are a form of expression protected by the First Amendment (Ross v Goshi, supra; Peltz v City of South Euchlid, supra; Aiona v Pai, 516 F2d 892), the town has the burden of showing, not only that the ordinance has some rational relationship to the effectuation of a propér governmental purpose, but, that it is necessary to promote a compelling State interest (N.A.A.C.P. v Button, 371 US 415) and that its restrictions are no greater than necessary. (United States v O’Brien, supra.)
It is the conclusion of this court that the town has not met its burden under the above rule, and, accordingly, its enactment is declared void. In so holding, the court recognizes that political sign ordinances, based on aesthetic considerations, have been upheld in this State. (Matter of Gibbons v O’Reilly, 44 Misc 2d 353; Town of Huntington v Estate of Schwartz, 63 Misc 2d 836) and such cases remain under the influence of People v Stover (supra).
In Stover, the court, in upholding a local ordinance against a charge that it violated the First Amendment, held that the right of free speech may be restricted by reasonable regulations enacted for the promotion of aesthetic considerations. Relying on Stover, the local ordinances pertaining to political signs considered in Gibbons and Schwartz were upheld despite the fact that a degree of infringement upon political expression was apparent. Perhaps a distinguishing feature could be found between the case at bar and Gibbons and Schwartz. However, the difference would be so minute as to be, in reality, artificial. Suffice it to say that based upon the rationale in Baldwin v Redwood City (540 F2d 1360, supra) and especially footnote 37 (p 1373), which indicates that both of these cases are contrary to its holding, this court cannot conform to the rationale in Gibbons and Schwartz in spite of the fact they are from courts of sister counties.
*764 By the ordinance before this court for review, the town has transgressed the parameters of reasonable or incidental infringement upon fundamental rights. Section 70-201 prohibits the erection of free standing signs within the entire jurisdiction. Such regulation is unnecessarily restrictive and stifles personal liberties in a manner too broad for the protection of legitimate interests.
The ordinance is unconstitutional because it makes an impermissible distinction between political signs and other signs and because it proscribes expression protected by the First Amendment. As signs are today indispensible instruments of effective political expression and have become an accepted method of campaigning, the town may not outlaw the erection of free standing political signs in order to accomplish its purposes. Rather, any abuses which political signs can create may be controlled by narrowly drawn statutes.
The following general rule may be drawn from decisions in which ordinances have been weighed against the First Amendment: Incidental restrictions upon the exercise of First Amendment rights may be imposed in furtherance of legitimate governmental interests if that interest is unrelated to suppression of expression and is substantial in relation to the restrictions imposed, and if the restrictions are no greater than necessary. (United States v O’Brien, 391 US 367, supra; Ross v Goshi, 351 F Supp 949, supra; Baldwin v Redwood City, 540 F2d 1360, supra.)
The constitutional protection of free speech has its most urgent application to political campaigns and communication by signs connected therewith may be restricted only for compelling reasons. As this ordinance discriminates among different users of the same medium of expression and bans freestanding political signs, an exclusion based on content, it must be carefully scrutinized.
A balance of the various community interests in passing upon the constitutionality of local regulations of the character involved here must be made. In that process, however, the freedoms of the First Amendment are to be given a preferred position. (Marsh v Alabama, 326 US 501.)
The town argues that the exclusion of free-standing political signs is necessary for the protection of aesthetic interests. It has, however, made no showing that such signs, reasonable in size, structure and placement, constitute a greater blemish on the landscape than other signs. The court recognizes that *765 during election time, the indiscriminate placement of signs may present potential for abuses. It is with the abuses the town must deal; the regulation herein, in a constitutional contest, is an overreaction.
This court must, therefore, hold that the total exclusion of free-standing signs is unconstitutional. In doing so, decisions are noted in sister States which support this view. (Pace v Village of Walton Hills, 15 Ohio St 2d 51; Peltz v City of South Euchlid, 11 Ohio St 2d 128, supra; Farrell v Township of Teaneck, 126 NJ Super 460; and Federal cases with like holdings, Verrilli v City of Concord, 548 F2d 262; Ross v Goshi, supra; Baldwin v Redwood City, supra; Aiona v Pai, 516 F2d 892, supra.)
The ordinance affects the erection of signs, a form of political expression, by classification formulated in terms of content. The crucial question is whether there is an appropriate governmental interest furthered by such differential treatment. (Saia v New York, 334 US 558; McGowan v Maryland, 366 US 420.) In the absence of a compelling justification for such classification, such disparate treatment is impermissible. (Police Dept. of Chicago v Mosley, 408 US 92.)
The ordinance directly infringes the First Amendment rights of candidates and political organizations. More significant, however, is the fact that this ordinance stifles political expression of individuals who want to utilize a traditional First Amendment forum. As the town has ignored the right of residents to express their views, it must find less oppressive means by which to accomplish its purposes.
The court also holds that, though the provision calling for permits as a precondition to the erection of wall signs (§ 70-201, subds [F], [H]) is a valid exercise of the police power, the fee structure herein is unconstitutional by virtue of the differential treatment accorded to political signs as opposed to nonpolitical signs.
The requisite fees for nonpolitical signs are set forth in section 70-198 of the town code. They are nominal and call for no bond to be posted. The requisites for political signs are set forth in subdivision (H) of section 70-201; these require the posting of a $1,000 performance bond, or a $50 cash deposit as a condition for a permit to erect a political wall sign. As the code clearly treats nonpolitical advertising less stringently than political advertising, the ordinance pertaining to permits is invalid. In the present situation, the mere presence of such *766 permit fees places a chilling effect on the expression of political opinion. As has been previously pointed out, if there must be regulations at all, such regulation cannot involve more stringent requirements for political expression unless there has been shown a compelling argument for such distinction. In the absence of such justification, the town ordinance is an unreasonable abridgement of fundamental rights under the First and Fourteenth Amendments. (See Baldwin v Redwood City, 540 F2d 1360, supra.)