Jasen, J.
At issue on this appeal is the validity of a 1967 milage ordinance which bans commercial signs greater than four square feet in area.
The defendant Goodman owns and operates a drugstore in the Village of Ocean Beach, Suffolk County. The village, located on the barrier beach known as Fire Island, within the Fire Island *264 National Seashore, encompasses an area of about 1,800 feet from ocean to bay and is accessible only by ferry boat. Ocean Beach has a summertime population of up to 10,000 persons, and a year-round population of less than 200. The village business block, located near the bay, contains about 28 business establishments. Goodman’s drugstore, the only drugstore in Ocean Beach, is located in this business district. The drugstore consists of two sections — the pharmacy or prescription section, and a section devoted to the display and sale of a variety of nondrug commodities. Mr. Godman, a registered pharmacist, occasionally administers first-aid treatment to patrons.
The ordinance in question was enacted by the Village Board in 1967 to conform to regulations (Code of Fed. Reg., tit. 36, § 28.4, subd. [e]) promulgated by the Secretary of the Interior under authority of the Fire Island National Seashore Act. (U. S. Code, tit. 16, § 459e-2.) The ordinance, taken verbatim from the Secretary of Interior’s regulations, provides in pertinent part that: “ Signs within the incorporated Village of Ocean Beach shall not be illuminated and shall be limited in size to 1 square foot in area * * * This size limitation shall not apply to existing commercial or business uses for which the signs may not exceed 4 square feet in area and may be placed only on the property on which the commercial or business use occurs. Nonconforming signs may continue such nonconformity until they are destroyed, structurally altered, reconstructed, changed or moved, but the period of such nonconformity may not exceed two years from the date of the enactment of this ordinance.” (Village of Ocean Beach Ordinances, art. II, § 4 [1967].)
Penal sanctions are contained in section 9 of article II of this ordinance, which provides: ‘ ‘ Any person violating any of the provisions of this Article shall be liable to a penalty not exceeding Two Hundred Fifty Dollars ($250.00) for each offense. In addition thereto, such violation shall constitute disorderly conduct and every person violating the same shall be a disorderly person, and upon conviction therefor, shall be punished by a fine of not more than Two Hundred Fifty Dollars ($250.00) for each and every offense.”
Goodman maintained four signs on his drugstore, each sign exceeding four square feet in area. Charged with a violation *265 of section 4 of article II of the ordinances, he was found guilty after a trial and fined $100.
The defendant asserts that in providing pharmacological services and administering first aid on occasion, his drugstore renders a service in the public interest, and that, as applied to him, the ordinance contravenes health and safety considerations and exceeds the village’s authority under the police power.
We conclude that this ordinance represents a valid and permissible exercise of the police power and that the defendant’s conviction thereunder was proper and should be affirmed.
At the outset we note that the State and its political subdivisions may regulate the erection and maintenance of outdoor advertising under the police power (see, e.g., Railway Express v. New York, 336 U. S. 106; New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151; People v. National White Plains Corp., 299 N. Y. 694; People v. Arlen Serv. Sta., 284 N. Y. 340; 2 N. Y. Jur., Advertising and Advertisements, § 7; 7 McQuillin, Municipal Corporations, §§ 24.380-24.388; Ann., Billboards-Municipal Regulation, 58 ALR 2d 1314), and that villages are empowered by statute to regulate the maintenance of advertising media near streets and in public places (Village Law, § 89, subd. 47; 2 N. Y. Jur., supra) and to adopt ordinances for general purposes consistent with the exercise of the police power (Village Law, § 89, subd. 59).
It is now settled that aesthetics is a valid subject of legislative concern and that reasonable legislation designed to promote the governmental interest in preserving the appearance of the community represents a valid and permissible exercise of the police power. (People v. Stover, 12 N Y 2d 462.) Under the police power, billboards and signs may be regulated for aesthetic purposes. (Matter of Cromwell v. Ferrier, 19 N Y 2d 263; cf. Matter of Mid-State Adv. Corp. v. Bond, 274 N. Y. 82, 85 [Finch, J., dissenting], overruled 19 N Y 2d 263, 268; People v. Lou Bern Broadway, 68 Misc 2d 112; Town of Huntington v. Estate of Schwartz, 63 Misc 2d 836; Village of Larchmont v. Sutton, 30 Misc 2d 245 [Hopkins, J.]; Preferred Tires v. Village of Hempstead, 173 Misc 1017; Matter of Dr. Bloom Dentist, Inc. v. Cruise, 259 N. Y. 358, 36.)
In the case before us, we deal with ail o/c. nonce concededly motivated by aesthetic conside? itions. oi course, as with every *266 enactment under the police power, this measure must satisfy the test of reasonableness. (Matter of Tyson, Inc., v. Tyler, 24 N Y 2d 671; People v. Bums, 9 N Y 2d 1; People v. Munoz, 9 N Y 2d 51; Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690; Good Humor Corp. v. City of New York, 290 N. Y. 312; 9 N. Y. Jur., Constitutional Law, § 176.) Our inquiry, therefore, is limited to determining whether, under all the circumstances, the means adopted in this ordinance are reasonably related to the community policy sought to be implemented, and are not unduly oppressive. (Matter of Tyson, Inc. v. Tyler, 24 N Y 2d 671, supra; People v. Bunis, 9 N Y 2d 1, supra; People v. Munoz, 9 N Y 2d 51, supra; Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690, supra; 9 N. Y. Jur., Constitutional Law, §§ 176-179,181.)
In assessing the reasonableness of such legislation, we may properly look to the setting of the regulating community. (Matter of Cromwell v. Ferrier, 19 N Y 2d 263, 272, supra.) To be sure, not every artistic conformity or nonconformity is within the regulatory ambit of the police power. Indeed, regulation in the name of aesthetics must bear substantially on the economic, social and cultural patterns of the community or district. (Matter of Cromwell v. Ferrier, 19 N Y 2d, at p. 272.) Here, our focus is on a small summer resort community, located on a narrow belt of sand, bounded by bay and ocean, situated within the Fire Island National Seashore. In creating the Fire Island National Seashore, the Congress recognized the special cultural values and natural resources of the area and acted to conserve and preserve for future generations the relatively unspoiled and undeveloped beaches, dunes and other resources within Suffolk County. (U. S. Code, tit. 16, § 459e.) It is against this background that the local legislative body acted to regulate the display of commercial signs and to adapt their use to fit the rather unique cultural character and natural features of the area.
The defendant’s argument that the ordinance is invalid because it contravenes health and safety aspects of the police power is not persuasive. He seeks to clothe his drugstore with a public interest, and urges that, as applied to him, the ordinance is invalid. However, his business is, in fact, largely a commercial enterprise and its essential character is not affected merely because, on occasion, first aid is administered there. Practically speaking, it would seem that in a genuine emergency a *267 person in need of aid would turn to an agency such as the Ocean Beach Police Department (located across the street from the defendant’s drugstore).
Clearly this is not a case where the legislative body has gone too far in the name of aesthetics. (People v. Stover, 12 N Y 2d, at p. 468.) This ordinance has a demonstrably valid objective under the police power — that is, to promote the appearance of the community; the means employed are reasonably related to this objective, and even assuming some impact on health and safety considerations, under all the circumstances, this legislation is not arbitrary, unreasonable, or oppressive. (Cf. Town of Somers v. Camarco, 308 N. Y. 537; People v. Perretta, 253 N. Y. 305.) The ordinance is regulatory rather than prohibitory and expressly allows for the display of commercial signs of four square feet or less with a two-year abatement period for nonconforming signs. Additionally, there has been no showing that, because of the size limitation on commercial signs, persons in need of pharmacological services could not locate the drugstore. Nor has it been shown that people could not be referred to the drugstore by other means or that the ordinance otherwise imposes an undue hardship on the defendant. Moreover, this ordinance commands no arbitrary or capricious standard of beauty. Bather, it recognizes that advertising signs, if not adapted to their surroundings, may materially affect the appearance and character of the community.
In sum, this ordinance merely proscribes the erection and maintenance of commercial signs which, in the circumstances and setting here present, would be unnecessarily offensive to the visual sensibilities of the average person and would materially detract from the community and district pattern. (Matter of Cromwell v. Ferrier, 19 N Y 2d 263, supra; People v. Stover, 12 N Y 2d 462, supra; New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151, supra.)
Similarly, the defendant’s claim that the ordinance is unconstitutionally vague is unfounded. A statute is void for vagueness if it “ fails to give a person of ordinary understanding fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.” (United States v. Harris, 347 U. S. *268 612, 617.) Measured by this standard, it cannot be said that the ordinance is vague. Section 4 of article II of the village ordinances explicitly proscribes the erection or maintenance of commercial signs in excess of four square feet, and section 9 of the same article contains the penal sanction for a violation of section 4.
As a final point, defendant claims discriminatory enforcement of the ordinance against him constituting a denial of equal protection of the law. The claim of discriminatory enforcement was raised by a motion to dismiss the information at the close of the People’s direct case. After oral argument, the court denied the motion. Later, after the evidence was closed, the defendant renewed the motion, and it was, once again, denied.
While it is true that intentional or purposeful discrimination in the administration of an otherwise nondiscriminatory law violates equal protection (Yick Wo v. Hopkins, 118 U. S. 356; People v. Friedman, 302 N. Y. 75; People v. Utica Daw's Drug Co., 16 A D 2d 12), it must be borne in mind that one who alleges discriminatory enforcement must meet the “heavy burden ’ ’ of showing ‘ ‘ conscious, intentional discrimination ’ ’ (People v. Utica Daw's Drug Co., 16 A D 2d, at p. 19), or a consciously practiced pattern of discrimination (People v. Friedman, 302 N. Y. 75, supra). The conscious exercise of some selectivity in enforcement of the law is not in itself a constitutional violation. (Oyler v. Boles, 368 U. ,S. 448; Matter of Di Maggio v. Brown, 19 N Y 2d 283.) Even though the defendant asserts that certain other offenders have not been prosecuted, the record discloses that on the day he was sentenced, three other persons were convicted under the same ordinance.
Although we are satisfied that in this nonjury case the defendant was afforded sufficient opportunity to establish his claim of discriminatory enforcement and failed to meet the heavy burden of proof required to sustain his claim, we take this opportunity to express our views on a better approach to the problem and one that we believe should be followed hereafter where a claim -of discriminatory enforcement of the law is at issue.
We approve the approach advocated by the late Justice Halpern in People v. Utica Daw's Drug Co. (16 A D 2d 12, supra) as the proper procedure to be followed in such cases. In short, the claim of discriminatory enforcement should not *269 be considered as an affirmative defense to the criminal charge, to be determined together with the issue of guilt by the trier of fact, but, rather, should be addressed to the court before trial as a motion to dismiss the prosecution upon constitutional grounds.
A claim of discriminatory enforcement does not reach the issue of the guilt or innocence of the defendant and, therefore, is not peculiarly within the province of the trier of fact. It goes, rather, to the more basic threshold question whether the court, as an agency of government, should lend itself to a prosecution which discriminates against the defendant by singling him out for prosecution because of personal animosity, nonconformity, unpopularity, or some other illegitimate reason offensive to our notions of fair play and equal treatment under the law. This question, like a motion to suppress illegally seized evidence, reaches identity integrity of the judicial and law enforcement processes, and in the interest of judicial economy and the avoidance of delay or confusion at trial, should be addressed to the court by a pretrial motion to dismiss the information or indictment in accordance with article 170 or article 210 of the Criminal Procedure Law.* Of course, the defendant will still have the heavy burden of showing that a pattern of discrimination has been consciously practiced against him (People v. Friedman, 302 N. Y., at p. 81; People v. Utica Daw’s Drug Co., 16 A D 2d 12, supra), and that the law has been administered “ with an evil eye and an unequal hand” (Yick Wo v. Hopkins, 118 U. S., at pp. 373-374).
The order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bebgan, Bbeitbl and Gibson concur.
Order affirmed.

 See subdivision 1 (par. [h]) of section 210.20 of the Criminal Procedure Law which contains a dragnet provision authorizing a motion to dismiss an indictment on the basis of any “ other jurisdictional or legal impediment to conviction” not mentioned in the other paragraphs. Subdivision 1 (par. [f]) of section 170.30 of the Criminal Procedure Law contains a similar provision for a motion to dismiss an information.